## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RODNEY G. SMITH, EXECUTIVE DIRECTOR of the TEAMSTERS UNION 25 HEALTH SERVICES AND INSURANCE PLAN, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. |
| COASTAL OIL NEW ENGLAND, INC. and EL PASO MERCHANT-ENERGY PETROLEUM COMPANY, | ) ) ) ) | |
| Defendants. | ) ) ) | |

MAGISTRATE JUDGE _____

RECEIPT # _____
AMOUNT $ 150
SUMMONS ISSUED yes
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE 12/8/04

### COMPLAINT

#### Introductory Statement

1.  This is an action brought on behalf of Teamsters Union 25 Health Services and Insurance Plan (hereinafter, the "Plan") to enforce the terms of the Plan documents and compel the Defendants, Coastal Oil New England, Inc. (hereinafter, "Coastal Oil") and El Paso Merchant-Energy Petroleum Company (hereinafter "El Paso Merchant-Energy") to allow the Plan to audit its payroll records concerning contributions made to the Plan.

#### Jurisdiction and Venue

2.  The jurisdiction of this Court is founded upon Section 502(e)(1) of the Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA"), as amended, 29 U.S.C. §1132(e)(1), which grants the district courts of the United States exclusive jurisdiction of civil actions brought to enforce the terms of an employee benefit plan and/or the provisions of ERISA.

3.     Venue is appropriate in this Court under Section 502(e)(2) of ERISA, 29 U.S.C.

§1132(e)(2), which provides that an action may be brought in the district where the

relevant employee welfare benefit plan is administered. and pursuant to 28 U.S.C.

§1391(a), because Plaintiff's claims arose in this District.

### Parties

4.     Rodney G. Smith (hereinafter, "Plaintiff") is the Executive Director of the Teamsters

Union 25 Health Services and Insurance Plan (hereinafter, "Plan").  He is a fiduciary of

the Plan within the meaning of ERISA Section 3(21), 29 U.S.C. §1002(21), and he is

authorized to bring this action on behalf of the Plan.

5.     The Plan is an "employee welfare benefit plan" within the meaning of ERISA Section

3(1), 29 U.S.C. §1002(1), and is a "multi-employer plan" within the meaning of Section

3(37)(A) of ERISA, 29 U.S.C. §1002(37)(A).  The Plan is administered by Trustees in

accordance with LMRA Section 302(c)(5), 29 U.S.C. §186(c)(5), and exists for the

exclusive purpose of providing health, medical and related benefits to its participants and

beneficiaries.  The Plan has its principal office and is administered from 16 Sever Street,

Charlestown, Massachusetts 02129.

6.     Defendant, Coastal Oil New England, Inc., is a  foreign corporation with a usual place of

business at 1001 Louisiana Street, Houston, Texas, 77002.

7.     Defendant, El Paso Merchant Energy Petroleum Company, is a foreign corporation with a

usual place of business at 1001 Louisiana Street, Houston, Texas, 77002

### Allegations of Facts

8.     Throughout all times relevant herein, Defendant, Coastal Oil New England,  has been

obligated to make contributions to the Plan in accordance with the terms of an Agreement

2

and Declaration of Trust executed between Defendant and the Plan, said contributions to be made on behalf of each employee of the Defendant performing work within the scope of and/or covered by one or more collective bargaining agreements executed by the Defendant and Teamsters Local Union No. 25 (hereinafter, "Local 25"). A true copy of the Agreement and Declaration of Trust is attached hereto as Exhibit 1.

9.      Pursuant to a collective bargaining agreement executed by Defendant and Local 25, Defendant authorized the Plan Trustees to have an independent certified public accountant audit Defendant's payroll and wage records to determine the accuracy of its contributions to the Plan. A true copy of the April 1, 2000 through March 31, 2003 collective bargaining agreement is attached hereto as Exhibit 2.

10.     By letter dated May 9, 2001, the Plan was informed that it should send the monthly remittance reports for Local 25 union employees employed by Coastal Oil New England, Inc., to the El Paso Energy Service Co., at 1001 Louisiana, in Houston, Texas. A true copy of the May 9, 2001 letter is attached hereto as Exhibit 3.

11.     By letter dated May 22, 2001, El Paso Energy Service Co., informed the Plan that Coastal Oil New England had merged with El Paso Energy Service Co. to form the El Paso Corporation. A true copy of the May 22, 2001 letter is attached hereto as Exhibit 4.

12.     From  October 17, 2003 to the present, accountants retained by the Plan Trustees have attempted to schedule an appointment with the Defendant for the purpose of examining and auditing Defendants' payroll records from April 1, 2000 to March 31, 2003.

13.     From October 17, 2003 and continuing to the present, the Plan's accountants have been denied access to Defendants' payroll records.

3

## COUNT I

### (Enforcement of the Plan's Terms)

14.    Plaintiff reavers every allegation contained in paragraphs 1 through 13 herein.

15.    Defendants Coastal Oil New England and El Paso Merchant-Energy have violated the terms of the Plan by failing to furnish the accountants retained by the Plan with the information and documentation referred to in paragraph 8.

16.    Plaintiff is entitled to enforcement of the Plan's terms pursuant to ERISA Section 502(a)(3), 29 U.S.C. §1132(a)(3)(B)(ii).

## COUNT II

### (Breach of Contract)

17.    Plaintiff reavers every allegation contained in paragraphs 1 through 16 herein.

18.    Defendants Coastal Oil New England and El Paso Merchant-Energy have breached their contractual obligations to furnish the information and documentation referred to in paragraph 8.

19.    Plaintiff is entitled to enforcement of those contractual obligations.

**WHEREFORE**, the Plaintiff prays the Court to grant him the following:

(a)    A judgment in favor of Rodney G. Smith, as Executive Director of the Teamsters Union 25 Health Services and Insurance Plan, and against Coastal Oil New England, Inc. and El Paso Merchant-Energy Petroleum Company;

(b)    An order obligating Defendants Coastal Oil New England, Inc. and El Paso Merchant-Energy Petroleum Company to furnish the accountants retained by the Plan with the information and documentation referred to in paragraph 8;

(c)    Attorneys' fees and costs; and

(d)    Any such other relief as the Court finds appropriate.

For the Plaintiff,
**RODNEY G. SMITH, EXECUTIVE
DIRECTOR of the TEAMSTERS UNION 25
HEALTH SERVICES AND INSURANCE
PLAN**
By his attorneys,


Matthew E. Dwyer
B.B.O. # 139840
Kathleen A. Pennini
B.B.O. # 654573
Dwyer, Duddy & Facklam, P.C.
One Center Plaza; Suite 360
Boston, MA  02108-1804
(617) 723-9777

Date: _____

f:\l25hsip\coastaloilne\pldg\complaint.audit.doc:blg

# TEAMSTERS UNION 25
# HEALTH SERVICES & INSURANCE PLAN



## *AGREEMENT AND DECLARATION*
## *OF TRUST*

# AGREEMENT AND DECLARATION OF TRUST

This Agreement and Declaration of Trust originally made the twelfth day of April, 1954 by and between the five Employer Trustees, signatories thereto and the five Union Trustees, signatories thereto hereinafter collectively called the "Trustees"; the Employers Group of Motor Freight Carriers, Inc., hereinafter referred to as the "Association"; and Teamsters, Chauffeurs, Warehousemen and Helpers Union No. 25, hereinafter referred to as the "Union"; and the several Employers who are, and the several Employers who shall join and become parties to this Agreement and Declaration of Trust as hereinafter provided.

## WITNESSETH

WHEREAS, an Agreement dated April 12, 1953 had been entered into between the Association and the Union which Agreement provided that subject to certain terms and conditions each Employer should pay .07¢ per hour for each straight-time hour worked by each of its Employers by a contribution to a Health and Welfare Fund hereinafter referred to as the "Trust Estate" for the benefit of said Employers or other Employers provided, however, that the rate of contribution shall be in accordance with any further continuation of the Agreement or any further Agreement which may be entered into between the Union as hereafter defined:

WHEREAS, the Union has executed and may execute similar Collective Bargaining Agreements with individual Employers whether members of the Association or not, who are Employers of the members of the Union concerning contributions to said Trust Estate and,

WHEREAS, said Trust Estate in whole or in part could be used for certain group insurance benefits for eligible employees as deemed hereunder, and,

WHEREAS, the Agreement and Declaration of Trust made as of the twelfth day of April, 1954 by and between the aforementioned parties has from time to time been amended and,

WHEREAS, the said Agreement and Declaration of Trust is still in full force and effect and has been since the date first mentioned above, but during such period the Trustees have found it necessary to amend said Agreement and Declaration of Trust and,

WHEREAS, the Trustees, for purposes of clarity and administrative ease, deem it wise, desirable and beneficial to incorporate all of the amendments made to such Agreement and Declaration of Trust from April 12, 1954 through April 26, 1966, and to incorporate all of said amendments and certain other revisions deemed necessary by the Trustees into a revised Agreement and Declaration of Trust and,

WHEREAS, this instrument incorporates all of such amendments and,

WHEREAS, the Trustees, signatories hereto by their execution of this Agreement, hereby ratify the continuation of the aforementioned Trust and accept the Trust herein created and continued and declare that they will administer the same pursuant to the provisions hereof.

NOW THEREFORE, IN CONSIDERATION OF THE PREMISES AND THE COVENANTS HEREIN CONTAINED, THE ASSOCIATION, EACH EMPLOYER WHO IS OR BECOMES A PARTY TO THIS AGREEMENT, AND THE UNION SEVERALLY DECLARE THAT IT IS THEIR MUTUAL OBLIGATION TO ESTABLISH THE WITHIN TRUST FOR THE PURPOSE OF SETTING UP A HEALTH AND WELFARE PLAN PROVIDED FOR IN THE SAID AGREEMENT ABOVE REFERRED TO AND THAT THEY WILL DO ALL THINGS REQUIRED OF THEM TO DISCHARGE SAID OBLIGATION AND EFFECTUATE THE PURPOSES OF SAID TRUST AND WILL DO ALL THINGS HEREINAFTER SPECIFICALLY REQUIRED OF THEM, AND THE TRUSTEES DECLARE THAT THEY WILL RECEIVE AND HOLD CONTRIBUTIONS OR PAYMENTS AND ANY OTHER MONEY OR PROPERTY WHICH MAY COME INTO THEIR HANDS AS TRUSTEES HEREUNDER ALL SUCH FUNDS BEING HEREINAFTER REFERRED TO AS THE "TRUST ESTATE" WITH THE FOLLOWING POWERS AND DUTIES, FOR THE FOLLOWING USES AND PURPOSES, AND UPON THE FOLLOWING TERMS AND CONDITIONS:

## DEFINITIONS

1. The term "Employer," as used herein, shall include all employer members of the Association and in addition shall mean an employer of labor in the general trucking industry and other Employers who employ employees covered by contracts with the Union as defined in Paragraph 2 below and either (a) has in force or who executes an agreement with the Union providing for such Employer's participation in this Trust and his adoption of this Declaration of Trust, or (b) who shall, with the consent of the Trustees, execute a form furnished by the Trustees undertaking all the duties of an Employer participating in this Trust. The term "Employer" may also include the Teamsters, Chauffeurs, Warehousemen and Helpers Union No. 25 and related Trust Funds which provide benefits for employees covered by this plan.

1

It is understood and agreed that any Employer becoming an Employer under this Agreement, who shall not be a member of the Association, agrees to abide by all the provisions, rules and regulations set forth in any agreement involving the Trust Estate by and between the Association and the Union and agree that the Association shall be his representative in connection with the Trust Estate.

2.   The term "Employee" as used herein shall mean an Employee of an Employer hereunder who shall be covered by a collective bargaining agreement between the Association and the Union or between an Employer and the Union.

3.   The term "benefit" shall include such of the benefits authorized under Paragraph 8 as the Trustees shall determine are possible. There shall be no benefits paid for any occupational injury or illness compensable under any statute. In the event of a state or federal compulsory cash sickness benefit law, the benefits paid hereunder may, at the discretion of the Trustees, be reduced by the amounts paid under any such law.

4.   The term "Union" shall mean Teamsters, Chauffeurs, Warehousemen and Helpers Union No. 25, hereinafter referred to as the "Union."

5.   (a) The term "Party to this agreement" shall include all Employer members of the Association and also any Employer who shall in writing accept the terms of this Trust and be accepted in writing by the Trustees and Teamsters, Chauffeurs, Warehousemen and Helpers Union No. 25.

(b) The title of the Trust created herein shall be "Teamsters Union 25 Health Services & Insurance Plan."

## ADMISSION TO THE TRUST

6.   (a) Any Employer of labor within the jurisdiction of the Union, not an original party to this Declaration of Trust, who employs Employees as defined in Paragraph 2 above may be permitted by the Trustees to become a party to this Declaration of Trust upon the condition that the said Employer shall subscribe to a collective bargaining agreement with the Union and to the terms of this Agreement.

## THE TRUST ESTATE

7.   The Trustees shall have the power to demand, collect and receive employer contributions or payments and other funds and may hold the same until applied to the ultimate purposes provided for in Paragraph 8 hereof, and may take such steps, including the institution and prosecution of or the intervention in any proceeding at law or in equity or in bankruptcy, as may be necessary or desirable to effectuate the collection of such employer contributions or payments and other funds to which said Trustees shall be entitled under the Agreements hereinbefore referred to.

8.   The Trustees shall hold, manage, invest and reinvest the Trust Estate for the following purposes and upon the following conditions:

(a) The Trustees are authorized to maintain a self-insured fund, operate clinics or other facilities for health services, and/or to purchase policies of group insurance to be issued by an insurance company or companies duly authorized to conduct business in the Commonwealth of Massachusetts, providing for eligible employees and dependents only such benefits in amounts which the Trustees, in their sole discretion, deem necessary or desirable to best effectuate the purpose of this Trust.

Such policies may contain such provisions and be subject to such limitations and conditions as the Trustees, in their sole discretion, shall from time to time determine, and shall include such employees as the Trustees shall from time to time determine are eligible for receipt of such benefits, in accordance with the eligibility requirements under Paragraph 11.

(b) The Trustees are authorized to provide, through self-insurance or clinics or other facilities for health services or to pay, or cause to be paid the premiums on group insurance policies providing benefits for temporary disability, hospital expense, surgical expense, medical expense, dental expense, optical expense, life insurance, and accidental death and dismemberment benefits and such other benefits and forms of group insurance as may be proper under Paragraph 8(a) and as the Trustees may determine from time to time; to insure such employees and their dependents as shall be eligible in accordance with the rules and regulations determined by the Trustees from time to time in accordance with the eligibility requirements under Paragraph 11. The policies of insurance may be contracted for in the name of and issued to the Trustees and may contain such provisions as the Trustees may determine.

2

(c) The Trustees are authorized to pay or cause to be paid all reasonable and necessary expenses of creating this Trust, of collecting the employer contributions or payments and other funds to which the Trustees may be entitled and of administering the affairs of this Trust, including the employment of such administrative, legal, expert and clerical assistance, purchase or lease of such premises, materials, supplies, and equipment, and the performance of such other acts as the Trustees, in their sole discretion, find necessary or appropriate in the performance of their duties.

(d) The Trustees are authorized to establish, hold, and accumulate such reserve funds as are necessary for the proper execution of the Trusts herein created.

(e) The Trustees are authorized to deposit all funds and monies received by them in such bank or banks in the Commonwealth of Massachusetts as they may select and with respect to such Reserve Funds as the Trustees are authorized to establish under Paragraph (d) of this Article, to appoint a national banking association or trust company each with a principal place of business in the Commonwealth of Massachusetts as Corporate Trustee to hold and invest and reinvest the Reserve Funds deposited with such Corporate Trustee under the terms of the expressed delegation of the Trustees' investment authority which are set forth in any applicable corporate trust agreement.

In investing the Reserve Funds held under Paragraph (d) of this Article the Trustees shall have full power to take any and all action with respect to holding, buying, selling, or maintaining such investments as they in their sole discretion may deem appropriate provided that no investment shall be made in any securities, of whatsoever nature or kind, of any Employer hereunder, or subsidiary or affiliate thereof; and subject to this provision the Trustees may delegate such investment authority to the Corporate Trustee.

(f) Notwithstanding any other provisions in this Agreement and Declaration of Trust, the Trustees are empowered to appoint Administrators to service policies of insurance purchased hereunder, to receive funds of the Trustees and to perform duties and exercise powers as may from time to time be agreed upon between the Trustees, including the lawful delegation of said responsibility, obligations or duties by said Trustees. Administrators, as used herein, shall include but not be limited to a Plan Administrator, Claim Administrator, and Accounting Administrator. The Trustees may also, by formal vote, appoint an Investment Manager who shall have such duties and responsibilities as may be determined by the Trustees and as is required by law.

## DUTIES OF EMPLOYER

9. Each Employer shall pay over to the Trustee, or their duly designated representative, not later than ten (10) days after the close of each work month a sum of money equal to the cents per hour required by the New England Freight Agreement and/or any other applicable collective bargaining agreement between the Union and any Employer as defined in Paragraph 1 during such work month. Such payment shall be accompanied by such reports as the Trustees in their sole discretion shall deem necessary or desirable in the administration of the Trust Estate.

10. The Trustees shall have the right to require such reports as are necessary for the fulfillment of this Declaration of Trust and the contracts of insurance, and without limiting the generality of the foregoing, each Employer and the Union (the members of which are covered by this agreement) shall promptly furnish to the Trustees on written demands such records of the employees as their names, social security number, payroll records and other information as may be necessary in connection with the administration of this Trust and said policies.

The Trustees may examine the pertinent records of each Employer at the Employer's place of business whenever they deem such examination to be necessary for the proper administration of the Trust Estate. The Trustees shall notify the Union and the Association and the appropriate Employer in the event any Employer shall be over more than twenty (20) days in default on any monthly payment, upon which occurrence an interest payment of ten (10) percent (10%) of the amount due plus all costs of collection incurred by the Trustees, including reasonable attorneys' fees, which in any event shall not be less than eighteen (18) percent (18%) and which shall attach to the original obligation.

## TRUSTEES

11.   The Trustees shall consist of three (3) persons named by the Association (hereinafter called Employer Trustees) and three (3) persons named by the Union (hereinafter called Union Trustees). Each Trustee shall continue to serve until his successor has been designated as hereinafter set forth.

12.   The Trustees, in their collective capacity, shall be known as the Teamsters Union 25 Health Services & Insurance Plan, and shall conduct the business of the Trust and execute all instruments in said name.

13.   The Trustees shall administer the Trust in accordance with its terms and the law.

14.   The Trustees may exercise all rights or privileges granted to the policyholder by the provisions of each policy purchased by the Trust Estate or allowed by the insurance carrier of each such policy and may agree with such insurance carrier to any alteration, modification or amendment of each such policy and may take any action respecting each such policy or the insurance provided thereunder which they, in their sole discretion, may deem necessary or advisable, and such insurance carrier shall not be required to inquire into the authority of the Trustees with regard to any dealings in connection with each such policy.

15.   The Trustees shall have the power to construe the provisions of this Declaration of Trust and the terms used herein, and any construction adopted by a majority of ALL the Trustees in good faith shall be binding upon ALL Employers and Employees and the Union which same are parties to this Declaration of Trust.

16.   The Trustees shall not receive compensation for the performance of their duties as Trustees, but shall be reimbursed for all reasonable and necessary expenses which they may incur in the performance of their duties.

17.   The Trustees shall promulgate such rules and regulations, plan of benefits, or such other documents, as may be proper and/or necessary for the sound and efficient administration of the Trust.

18.   (a) The Trustees shall manage the assets of the Trust and conduct themselves in accordance with the provisions of the Employee Retirement Income Security Act. It is further the express intention of the Trustees that this Declaration of Trust be applied and interpreted so as to be in full compliance with all applicable provisions of law including the Employee Retirement Income Security Act.

      (b) A rejected claimant may request a review of his case by the Trustees or by their designee for this purpose.

19.   A Trustee may resign and become and remain fully discharged from all further duty or responsibility hereunder upon giving thirty (30) days' notice in writing to the remaining Trustees, or such shorter notice as the remaining Trustees may accept as sufficient. Such notice shall state a date such resignation shall take effect; and such resignation shall take effect on the date specified in said notice unless a successor Trustee shall have been appointed at an earlier date, in which event such resignation shall take effect immediately upon the appointment of and acceptance of this Trust by such successor Trustee. Provided, however, that in the event that the party by whom he was appointed has failed to appoint a successor, such resignation will not become effective until his successor has been appointed, but in no event later than sixty days after the original notice has been sent to the remaining Trustees.

      The term of each Trustee shall be at the pleasure of the party by whom he was appointed.

20.   In the event any Trustee shall die, become incapable of acting hereunder resign, or be removed, or to provide for the expiration of the term of such Trustee, a successor Trustee shall be appointed by the party which appointed said Trustee. The successor to any Employer Trustee appointed by the Association shall be certified to the Trustees by an instrument signed by the President and Secretary of the Association. Upon the receipt of such certification by the Trustees, said successor Trustee shall be deemed to have been properly appointed a Trustee hereunder. The successor shall be certified to the Trustees by the President and Secretary of the Union and upon the receipt of such certification by the Trustees said successor Trustee shall be deemed to have been properly appointed a Trustee hereunder.

21.   Any successor Trustee shall immediately, upon his appointment as a Trustee and his acceptance of the trusteeship in writing, become vested with all the property, rights, powers, duties and immunities of a Trustee hereunder with like effect as if originally named as a Trustee, and the insurance carrier of each policy shall be immediately notified thereof.

22.  (a) No vacancy or vacancies in the office of Trustee shall impair the power of the remaining Trustees, acting in the manner herein provided, to administer the affairs of this Trust.

(b) In the event of the failure of any party to appoint a successor Trustee to fill a vacancy in the office of Trustee, which such party has the power to fill, for a period of thirty (30) days any two Trustees may petition a court of appropriate jurisdiction for an order requiring such a party to appoint a successor Trustee forthwith, and, in the event of the failure of said party to comply with such order, may petition a court of appropriate jurisdiction for the appointment of a successor Trustee to fill such vacancy.

23.  (a) The Employer Trustees shall elect one of their number to be Chairman of the board and Union Trustees shall elect one of their number to be Secretary-Treasurer. In no event shall said office be occupied at the same time by two Trustees appointed by the same party.

(b) The Employer Trustees shall elect one of their number to be Co-Chairman, who shall serve in the absence of the Chairman, and the Union Trustees shall elect one of their number as Co-Secretary-Treasurer, who shall serve in the absence of the Secretary-Treasurer. In no event shall said offices be occupied at the same time by two Trustees appointed by the same party. The term of office under Paragraph 24 (a) and Paragraph 24 (b) shall be at the pleasure of the Trustees.

24.  (a) The Trustees shall meet in Boston, Massachusetts, at least annually.

(b) Any two Trustees may call a special meeting in Boston, Massachusetts, setting the time and place, by giving at least five (5) days' notice in writing to the remaining Trustees, provided, however, that the time and place for a special meeting may be determined by all the Trustees at any regular meeting held under (a) of this Article, without the necessity of giving any further notice.

25.  (a) Four (4) Trustees, provided two (2) Employer Trustees and two (2) Union Trustees are present shall constitute a quorum for the transaction of business.

(b) Any action taken by the Trustees shall be by the concurring vote of four (4) Trustees, provided, however, that at least two (2) of the Employer Trustees and two (2) of the Union Trustees vote for the passage of the action.

(c) In the event of a deadlock of the Trustees in any matter, including the administration of the Trust Estate, the Trustees shall agree on an impartial umpire to decide such dispute, or in the event of failure of the Trustees to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on the petition of two Employer Trustees, or two Employee Trustees, *be* appointed by the United States District Court for the District of Boston.

26.  The Trustees shall keep true and accurate minutes, books of account, and records of all their transactions as Trustees, which shall be audited annually, or more often, by a Certified Public Accountant. All checks, drafts, vouchers, or other withdrawals of funds from the account or accounts of the Trust Estate shall be countersigned by the Chairman and Secretary-Treasurer or by one of the Trustees from each group of Trustees, as resolutions for such purposes may be adopted by the Trustees. A copy of the audit shall be furnished to the Association and to the Union. A copy of the annual audit shall be available for inspection by interested persons at the principal office of the Trust Estate and at such other places, if any, as may be designated.

27.  (a) The Trustees shall by resolution provide bonding coverage for themselves, fiduciaries and every person who handles funds or other property of the Trust in accordance with applicable law and the Employee Retirement Income Security Act.

(b) The Trustees may provide insurance for the fiduciaries of the Trust or for itself to cover liability or losses occurring by reason of the act or omission of a fiduciary in accordance with applicable law and the Employee Retirement Income Security Act.

28.  No successor Trustees shall in any way be liable or responsible for anything done or committed in the administration of the Trust prior to the date they become a Trustee. The Trustees shall not be liable for the acts or omissions of any investment manager, attorney, agent or assistant employed by them in pursuance of this agreement, if such investment manager, attorney, agent or assitant was selected pursuant to this Trust Agreement and such person's performance was periodically reviewed by the Trustees who found such performance to be satisfactory; provided that nothing herein shall relieve any Corporate Trustee of any liability with regard to the performance of its employees.

## TERMINATION OF TRUSTS

29.  Upon the termination of this Trust, the Trustees shall apply the Trust Estate, in whole or in part, to the purposes specified in Paragraph 8 with regard to any Employees who may be eligible thereunder at such time, and any part thereof, which cannot be so applied, shall be applied to such other purposes as in the sole discretion of the Trustees will best effectuate the purposes of this Trust, including, without in any way limiting the generality of the foregoing, the transfer of the Trust Estate to the Trustees of any Trust organized to fulfill the same general purposes as this Trust.

## MISCELLANEOUS

30.  This trust is created and accepted in the Commonwealth of Massachusetts and all questions pertaining to the validity or construction of this instrument and to the transactions of the parties hereto shall be determined in accordance with the laws of the Commonwealth of Massachusetts.

31.  Should any provision of this Declaration of Trust be deemed or held to be unlawful, or unlawful as to any person or instance, such facts shall not adversely affect the other provisions herein contained or the application of said provision to any other person or instance, unless such illegality shall make impossible or impractical the functioning of the ultimate plan.

32.  No person, partnership or corporation dealing with the Trustees shall be obliged to see to the application of any funds or property of the Trust, or to see that the terms of the Trust have been complied with, or be obliged to inquire into the necessity or expediency of any act of the Trustees, and every instrument effected by the Trustees shall be conclusive in favor of any person, partnership or corporation relying thereon that:

    (a) At the time of delivery of said instrument the Trust was in full force and effect;

    (b) Said instrument was effected in accordance with the terms and conditions of this Declaration of Trust; and

    (c) The Trustees were duly authorized and empowered to execute such instrument.

33.  The Trustees, by joining in the execution of this agreement, hereby accept the Trust.

34.  Whenever any words are used in this Declaration of Trust in the masculine gender, they shall be construed as though also used in the feminine or neuter gender in all situations where they would so apply, and wherever any words are used in this Declaration of Trust in the singular form they shall be construed as though they were also used in the plural form in all situations where they would so apply, and wherever any words are used in this Declaration of Trust in the plural form, they shall be construed as though they were also used in the singular form in all situations where they would so apply.

35.  No employee, nor any person claiming by, through or under any employee, nor any employer (except as to an overpayment of contributions due as provided by law) shall have any right, title, or interest in or to the Trust Estate or any part thereof; provided, however, that any employee who shall be actually covered by an insurance plan, or his beneficiaries under such plan, shall be entitled to the benefits in the forms and amounts and subject to the terms and conditions of such plan and of this Trust. No Employee shall have the option to receive any part of the employer's contribution instead of the benefits of such plan or of this Trust. No employee shall have the right to assign his rights or benefits under such plan or this Trust or to receive a cash consideration in lieu of such benefits, nor shall rights be otherwise assignable or attachable, either upon the termination of the Trust or his withdrawal through severance of employment, or otherwise.

36.  This Agreement and Declaration of Trust may be amended by a concurring vote of two (2) Employer Trustees and two (2) Union Trustees at a special meeting, or meetings, of the Trustees, called for that purpose pursuant to a vote duly adopted by at least four (4) Trustees; provided, however, that no amendment shall provide for the use of the Trust Estate then in the hands of the Trustees for any purposes other than those set forth in Article 8 of this Agreement and Declaration of Trust or eliminate or modify the terms of Article 32 of this Agreement and Declaration of Trust, or permit any return or payments over, or of any part of the then existing Trust Estate to any Employers, except the return of an overpayment of contributions due, or so amend this Agreement and Declaration of Trust that there shall not be an equal number of Employer Trustees and Union Trustees to administer this Trust. Any amendment adopted by the Trustees in the manner hereinbefore prescribed shall be set forth in an instrument of amendment and shall take effect only when said instrument of amendment shall have been signed by all of the Trustees.

37. This Agreement and Declaration of Trust may be revoked at any time by the unanimous consent of the Employers Group of Motor Freight Carriers, Inc., and Teamsters, Chauffeurs, Warehousemen and Helpers Union No. 25, Boston, Massachusetts. Revocation will take effect upon the execution of an instrument of revocation signed by the aforesaid consenting parties. Upon the termination in the foregoing manner, the Trustees shall apply the Trust Estate, in whole or in part, to the purposes specified in Paragraph 8 hereof, with regard to any employees who may be eligible thereunder at such time, and any part thereof which cannot be so applied shall be applied to such other purposes as, in the sole discretion of the Trustees, will best effectuate the purposes of this Trust, including without in any way limiting the generality of the foregoing the transfer of the Trust Estate to the Trustees of any Trust organized to fulfill the same general purposes as this Trust.

38. Nothing in this Agreement shall be construed so as to limit in any way the lawful rights of any of the parties hereto.

39. In the event that this Agreement and Declaration of Trust shall be amended or revoked, then the Trustees shall give such notice and, take such other action as necessary to comply with all the applicable provisions of law including the Employee Retirement Income Security Act.

IN WITNESS WHEREOF, the undersigned parties have hereunto set their hands and seals this 25th day of July 1975.

Signed, Sealed, and Delivered
in the Presence of:

**FOR THE UNION:**

**UNION TRUSTEES:**

TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN
AND HELPERS UNION No. 25

    *s/WILLIAM J. McCARTHY*

    *s/JOSEPH C. CONLON*

    *s/WILLIAM T. LYDEN*

**FOR THE ASSOCIATION:**

**EMPLOYER TRUSTEES:**

EMPLOYERS GROUP OF
MOTOR FREIGHT CARRIERS, INC.

    *s/SAMUEL D. KRINSKY, Chairman*

    *s/ALBERT P. SAGANSKY*

    *s/PAUL P. DOWLING*

BOSTON, MASS.
July 25, 1975

SUFFOLK, SS.

Then personally appeared the above-named Trustees who did execute this revised Agreement and Declaration of Trust in my presence and did declare same to be their free act and deed.

Seal.

    *s/JAMES T. GRADY*
    Notary Public

My Commission expires August 23, 1979

7

## ACCEPTANCE PAGE

The undersigned Employer, having entered into a collective bargaining agreement with Teamsters, Chauffeurs, Warehousemen and Helpers Union No. 25, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, which agreement provides, among other things, for contributions to the Teamsters Union 25 Health Services & Insurance Plan, agrees to be bound by the foregoing Agreement and Declaration of Trust and hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are named in said Agreement as Employer Trustees together with their successors selected in the manner provided in the within Agreement and ratifies and agrees to be bound by all actions taken by said Employer Trustees pursuant to the said Agreement and Declaration of Trust.

Dated: _April 9, 1990_

_Coastal Oil New England, Inc._
Employer

I certify and warrant that I am authorized to execute this acceptance on behalf of the above-named Employer.

By: _Gregory W. Howell, Executive Vice President_
Name and Title

8

# NOTICE OF NEW AGREEMENT
## ON
### HEALTH AND WELFARE

#6079

Date: __November 29, 2000__

FROM: __TEAMSTERS LOCAL 25__

Agmt # 1

Name of Employer: __Coastal Oil New England, Inc.__

Address _____ __99 Marginal St. POB C Chelsea, MA 02150__

New Employer _____ or Renewal __xx_____ or Extension _____

Effective Date of Agreement ___April 1, 2000_____

Effective Dates and Rates of Contributions to the Health and Welfare Fund

Date __April 1, 2000_____ Rate __$4.16 1/4_____

Date __April 1, 2001_____ Rate __$4.41 1/4_____

Date __April 1, 2002_____ Rate __$4.46 1/4_____

Expiration Date __March 31, 2003__

Number of Employees ____7_____

Copy of Contract ___XX____ is enclosed.

Teamsters Local 25 Health and Welfare Fund Agreement and Declaration of Trust Booklet signed by the above named Employer enclosed _____.

*Mark A. Harrington*
Signature
Mark A. Harrington

RECEIVED
DEC 04 2000
By_____

__Business Agent_____
Title

AGREEMENT BETWEEN


COASTAL OIL NEW ENGLAND, INC.
(Chelsea)


AND


TEAMSTERS LOCAL UNION NO. 25



RECEIVED
DEC 04 2000
By_____

AGREEMENT BETWEEN

COASTAL OIL NEW ENGLAND, INC. AND

TEAMSTERS LOCAL UNION NO. 25

TABLE OF CONTENTS

ARTICLE

ARTICLE I - UNION RECOGNITION ................................. 1
ARTICLE II - BARGAINING UNIT ................................. 3
ARTICLE III - TRANSFER OF WORK .............................. 4
ARTICLE IV - WAGES AND HOURS ................................ 4
ARTICLE V - WORKING CONDITIONS .............................. 5
ARTICLE VI - NOTICE ......................................... 6
ARTICLE VII - JURY DUTY ..................................... 6
ARTICLE VIII - TIME RECORD .................................. 7
ARTICLE IX - BEREAVEMENT .................................... 7
ARTICLE X - VACATION ........................................ 7
ARTICLE XI - STEWARDS ....................................... 8
ARTICLE XII - HOLIDAYS .....................................10
ARTICLE XIII - DISCHARGE AND SUSPENSION ....................11
ARTICLE XIV - MISCELLANEOUS ................................12
ARTICLE XV - DUES DEDUCTION ................................14
ARTICLE XVI - SENIORITY ....................................16
ARTICLE XVII - HEALTH AND WELFARE FUND .....................16
ARTICLE XVIII - SICK LEAVE .................................20
ARTICLE XIX - PENSION FUND .................................21
ARTICLE XX - GRIEVANCE PROCEDURE ...........................26
ARTICLE XXI - CONDITIONS OF EMPLOYMENT .....................27
ARTICLE XXII - ALCOHOL, DRUGS AND CONTROLLED SUBSTANCE
               POLICY ......................................28
ARTICLE XXIII - SUCCESSORS AND ASSIGNS .....................28
ARTICLE XXIV - TERMINATION OR RENEWAL ......................28
MEMORANDUM OF UNDERSTANDING ................................30
SIDE LETTER ................................................31

## AGREEMENT

'This AGREEMENT is effective as of the first day of April, 2000, by and between COASTAL OIL NEW ENGLAND, INC. of the first part, hereinafter called the "Company" or "Employer", and TEAM-STERS LOCAL UNION #25, an affiliate of the INTERNATIONAL BROTHER-HOOD OF TEAMSTERS, party of the second part, hereinafter called the "Union" or the "Local".

## ARTICLE I

### UNION RECOGNITION

Section 1.   (a)   The Employer recognizes and acknowledges that Local #25 is the exclusive representative of all employees presently employed as terminal operators for the purposes of collective bargaining as provided by the National Labor Relations Act.

(b)   All present employees who are members of the Local #25 on the effective date of the signing of this Agreement shall remain members of the Local in good standing as a condition of employment.  All present employees who are not members of Local #25 and all employees who are hired hereafter shall become and remain members of good standing of the Local #25 as a condition of employment on and after the 30th day following the effective date of the signing of this Agreement, whichever is the later. This provision shall be made and become effective under the provisions of the National Labor Relations Act, but not retroac-tively.

- 1 -

(c)  No provision of this Article shall apply in any state to the extent that it may be prohibited by state and/or federal law.  If, under applicable state law, additional requirements must be met before any such provisions may become effective, such additional provisions and requirements shall first be met.

(d)  If any provision of this Article is invalid under the law of any state wherein this contract is executed, such provisions shall be modified to comply with the requirements of state law or shall be renegotiated for the purpose of adequate replacement.  If such negotiations shall not result in mutually satisfactory agreement, either party shall be permitted all legal or economic recourse.

(e)  In those instances where subsection (b) hereof may not be validly applied, the employer agrees to recommend to all employees that they become members of the Local and maintain such membership during this Agreement, to refer new employees to the Local Union representative.

(f)  Nothing contained in this section shall be construed so as to require the employer to violate any applicable law, state or federal.

Section 2.  Any new employee shall work under the provisions of this Agreement but shall be employed only on a 60-working day trial basis, during which time he may be discharged without further recourse, provided, however, that the Employer may not discharge or discriminate or discipline for the purpose of evading this Agreement or discriminating against Union members.  After 60 working days the employee shall be placed on a

- 2 -

seniority list.  In case of discipline within the 60-working day
period, the Employer shall notify the Local #25 in writing.

Section 3.  (a)  It shall not be a violation of this Agree-
ment, and it shall not be cause for discharge or disciplinary
action in the event an employee refuses to enter upon any proper-
ty involved in a lawful primary picket line, including lawful
primary picket line at the Employer's place of business.  It
shall not be a violation of this Agreement and it shall not be
cause for discharge or disciplinary action if an employee refuses
to perform any service which his Employer undertakes to perform
for an employer or person whose employees are on a lawful strike
and which service but for such strike would be performed by the
employees of the employer or person on strike.

(b)  The Union agrees to notify the Company of such refusal
but agrees to deliver all freight received prior to giving of any
notification.  However, this Agreement to notify shall not apply
to disputes involving the International Brotherhood of Teamsters
or any of its Local Unions.

ARTICLE II

BARGAINING UNIT

Section 1.  All terminal operators employed or working on
or from the Company's premises at 99 Marginal Street, Chelsea,
Massachusetts, comprise the collective bargaining unit covered by
this Agreement.

Section 2.  All employees covered by this Agreement shall
work for the Company on whatever work is assigned to them by the

- 3 -

Company supervisors, it being understood that such work shall be incidental to the operation and maintenance of a petroleum products terminal.

## ARTICLE III

### TRANSFER OF WORK

Section 1. For the purpose of preserving job opportunities for the employees covered by this Agreement, the Company agrees that no work presently performed shall be transferred outside of Local #25 unless otherwise provided for in this Agreement. It is understood that no leasing device shall be used to evade this Agreement.

## ARTICLE IV

### WAGES AND HOURS

Section 1.

|  | Rate |
|---|---|
| April 1, 2000 | $ 20.25 |
| April 1, 2001 | 20.80 |
| April 1, 2002 | 21.50 |

Employees during their probationary period shall receive ninety percent (90%) of the applicable rate.

Section 2. Shift Differential. A shift differential of 30¢ per hour shall be paid those employees assigned to work the 4:00 p.m. to 12:00 midnight shift and a 40¢ per hour differential for those on the 12:00 midnight to 8:00 a.m. shift.

ARTICLE V

WORKING CONDITIONS

Section 1. Both the Company and the Union recognize that the Company operates a petroleum receiving and dispensing facility that requires continuous and flexible work schedules in order to best perform the Company's business activities. The Union hereby agrees that the members of the bargaining unit will work schedules consistent with the most efficient performance of the Company's business activities, and these shifts and schedules can be changed with seven (7) days notice by the Company.

Section 2. Subject to Section 1 above, the shift starting times shall be 12:00 midnight; 8:00 a.m.; 4:00 p.m.

The work week shall be forty (40) hours, consisting of five consecutive eight hour days.

Section 3. All time in excess of forty (40) hours in any work week shall be paid for as overtime at the rate of one and one-half (1 1/2) times the basic hourly rate of pay. Overtime shall also be paid for any work in excess of eight hours in any work day. Paid days shall be considered as time worked for the purpose of this section. All employees shall work a reasonable amount of overtime.

Section 4. An employee called in from home shall receive a guarantee of four (4) hours' work or pay unless he is called in less than four (4) hours before his regular shift begins.

Section 5. An employee called in to work on his day off shall be guaranteed eight (8) hours work unless the call-in is

- 5 -

for the purpose of hooking up or breaking down a ship or barge.
In such a case, the guarantee shall be for four (4) hours.

Section 6.  Overtime shall be figured in fifteen minute
periods.

Section 7.  All regular year-round employees called to
military training for two (2) weeks each contract year will have
the Company make up the difference in wages, up to forty (40)
hours per week.

## ARTICLE VI

### NOTICE

Section 1.  Any employee shall notify the employer the
night before when he is unable to report for work the following
day or night on time and failing to notify the employer the night
or day before, he may be discharged.  The above does not prevent
the Company from taking disciplinary action for unwarranted
absence.

Section 2.  When an employee is absent, he shall notify the
Company not later than 4:00 p.m. of the day preceding the date of
his intended return to work.

## ARTICLE VII

### JURY DUTY

Section 1.  Subject to applicable law, any employee called
to serve on Jury Duty shall receive the difference in wages
between his normal hourly earnings and the remuneration he
receives as a juror for time actually spent serving on said Jury

Duty. Employees shall report to work for their regular duties when temporarily excused from attendance at court.

## ARTICLE VIII

### TIME RECORD

Section 1. The time of each employee shall start and finish at his work station. A proper record shall be kept of the employee's time, which shall be available to the proper officials of Local #25.

## ARTICLE IX

### BEREAVEMENT

Section 1. In the event of a death in the immediate family (including father-in-law, mother-in-law, grandparent, grandchild, brother-in-law and sister-in-law) of an employee, the employee shall be paid for time lost not to exceed three (3) days.

## ARTICLE X

### VACATION

Section 1. All employees who have worked one thousand (1,000) hours during a contract year beginning April 1 and ending March 31 shall be entitled to vacation as follows:

| TIME OF CONTINUOUS EMPLOYMENT | VACATION |
|---|---|
| 1 year | 2 weeks |
| 5 years | 3 weeks |
| 10 years | 4 weeks |

Section 2. Vacations may be taken year round on an agreed-upon schedule. No employees may take more than two (2) weeks' vacation between May 1 and November 30 until all employees have

- 7 -

the opportunity to take two weeks during that period. In no event shall more than one (1) employee be on vacation at the same time.

Section 3. If a holiday falls in the man's vacation period, the man's vacation shall be extended an additional day.

Section 4. In computing time for the thousand (1,000) hours' eligibility for vacation pay, the following shall be counted:

(a) Overtime hours.

(b) Holidays.

(c) Vacation hours taken during the qualifying contract year.

(d) If an employee qualifies under the sick pay provision or is hurt on the job, the time lost up to one (1) year shall be counted as qualifying time toward his vacation.

Section 5. The rate of pay for vacations shall be the rate in effect at the time the vacation is taken.

Section 6. Vacation eligibility will be determined by anniversary date.

Section 7. No vacation pay shall be granted in lieu of vacation.

## ARTICLE XI

### STEWARDS

The Employer recognizes the right of the Union to designate the job stewards and alternates from the Employer's seniority list.

The authority of job stewards and alternates, so designated by the Union, shall be limited to and shall not exceed the following duties and activities:

(1) The investigation and presentation of grievances to his Employer or the designated Company representative in accordance with the provisions of the collective bargaining agreement.

(2) The collection of dues when authorized by appropriate Local Union action.

(3) The transmission of such messages and information which shall originate with, and are authorized by the Local Union, or its officers, provided such messages and information

    (a) have been reduced to writing, or

    (b) if not reduced to writing, are of a routine nature and do not involve work stoppage, slowdowns, refusal to handle goods, or any other interference with the Employer's business; provided, however, that the activities referred to in (1), (2), and (3) shall not be performed in such fashions as to unreasonably conflict with the steward's work duties.

Job Stewards and alternates have no authority to take strike action, or any other action interrupting the Employer's business, except as authorized by official action of the Union.

The Employer recognizes these limitations upon the authority of job stewards and their alternates, and shall not hold the Union liable for any unauthorized acts. The Employer, in so

recognizing such limitations, shall have the authority to impose proper discipline, including discharge, in the event the shop steward has taken unauthorized strike action, slowdown or work stoppage in violation of this Agreement.

Stewards shall be permitted to investigate, present, and process grievances on the property of the Employer, without loss of time or pay, provided there is no interference in the Employer's operation.

The steward shall be the senior man at all times.

## ARTICLE XII

### HOLIDAYS

Section 1. Employees working on the following holidays shall be paid eight hours' wages at the rate of time and one-half in addition to the day's pay.

| | |
|---|---|
| New Year's Day | Independence Day |
| Presidents' Day | Labor Day |
| Bunker Hill Day | Columbus Day |
| Patriots Day | Veterans Day |
| Memorial Day | Christmas Day |
| Thanksgiving Day | |

Section 2. The Company and the Union, recognizing Christmas as an unusual holy family day, agree that employees called to work that day shall be paid eight (8) hours' pay at the rate of double time in addition to the day's pay.

Section 3. Easter Sunday, if worked, shall be observed the same as Christmas. This is not a paid holiday.

Section 4. The above holidays shall not be deducted from the wages of the employees covered by this Agreement. All paid

holidays will be considered such regardless of the day in the calendar week on which it occurs.

Section 5.  All of the employees covered by the collective bargaining agreement shall be privileged to observe the above holidays without pay deductions, provided such employee or employees have been working during the payroll week in which any of these holidays occur.

Section 6.  Employees shall have one (1) personal day with pay each contract year at a time mutually convenient for the employee and the Company.

## ARTICLE XIII

### DISCHARGE AND SUSPENSION

The Company may suspend or discharge an employee for cause.

Section 1.  (a)  In all cases involving the discharge of an employee, the Company must immediately notify the discharged employee, in writing, of his discharge and the reason therefor. Such written notice shall also be given to the Shop Steward and a copy mailed to the Local Union office within one (1) working day from the time of discharge.

(b)  Any employee discharged must be paid in full for all wages owed him by the Company, including earned vacation pay, if any, as soon as possible, and in no event any longer than five (5) days.

(c)  In the event the Union desires to protest the justification of such discharge, such protest shall be filed, in writing, with the Company within ten (10) working days from date

- 11 -

of receipt of notice of discharge.  The Company agrees to investigate promptly such discharge and report its position to the Union within ten (10) working days from the date of the receipt of the Union protest.

(d)  If any employee is found to be unjustly discharged, he shall be reinstated and shall, within three (3) working days from the date of the arbitrator's award, be reinstated in his job with all seniority rights, and shall be paid for time lost in accordance with the arbitrator's award.

## ARTICLE XIV

### MISCELLANEOUS

Section 1.  Supper money after twelve (12) consecutive hours not to exceed $8.75.  ($9.00 effective April 1, 2001, and $9.25 effective April 1, 2001.)

Section 2.  In the event an employee is injured on the job and is receiving workers' compensation, the Company shall have the right to require the injured employee to submit to medical examinations from time to time to determine the extent of injury and to determine when the employee may return to his normal duties.  No employee will be required to return to work to perform other than such normal duties.

Section 3.  Time spent by employees going to court on Company business shall be paid for at prevailing rates under the terms of the contract.

Section 4.  It is further agreed that any employee covered by this Agreement called to military training by the United States shall retain full seniority providing such employee

- 12 -

applies for reemployment and is reemployed by the Company within 90 days after the termination of such military training.

Section 5. The Company agrees to furnish uniforms for its employees. They shall be laundered by the Company. The Company further agrees to furnish rubber boots, rain gear, gloves, foul weather gear (parkas) and safety shoes. All employees are required to wear safety shoes. On April 1 of each contract year, employees shall be given $150 for safety shoes. If a pair of shoes are damaged in a spill, the Company will replace the shoes up to a maximum of $75.

Section 6. When employees are required to attend any meeting called by the Company pertaining to Company business, then such meetings shall be held on the Company's time; however, employees will be paid only for the actual time in attendance at such meetings unless the employee is called in from his home more than four (4) hours prior to the beginning of his shift. In such case, the employee shall receive four (4) hours pay.

Section 7. The Employer agrees to grant the necessary and reasonable time off, without pay and without discrimination or loss of seniority rights equivalent to continued employment, to any employee designated by the Union to attend Labor Conventions or serve in any capacity on their official business. In making requests for time off for Union activities, due consideration shall be given to the number of men affected so there shall be no disruption of the Employer's operation. Subject to applicable law, an employee elected or appointed to any official position in

month.  Where laws require written authorization by the employee, the same is to be furnished in the form required.  No deduction shall be made which is prohibited by applicable law.

Section 2.  The Employer agrees to deduct certain specific amounts each week from the wages of those employees who shall have given the Employer written authorization to make such deductions.  The amounts so deducted shall be remitted to the TEAMSTERS CREDIT UNION once each month.  The Employer shall not make deductions and shall not be responsible for remittance to the Credit Union any deductions for those weeks during which the employee has no earnings or in those weeks in which the employee's earnings shall be less than the amount authorized for deduction.

The Employer will recognize authorization for deduction from wages, if in compliance with state law, to be transmitted to the Local Union or to such other organizations as the Union may request if mutually agreed to, except DRIVE deductions which shall be made annually.  No such authorization shall be recognized if in violation of state or federal law.  No deductions shall be made which are prohibited by applicable law.

Section 3.  That Sections 1 and 2 shall only apply to deductions made on behalf of the Union.

- 15 -

## ARTICLE XVI

### SENIORITY

Section 1.  After an employee has completed his probationary period, seniority shall revert to date of last hire.

Section 2.  There shall be a thirty (30) day notice of layoff.  Layoffs shall be by seniority.  Employees on layoff shall have recall rights in the reverse order of layoff for a period of twelve (12) months from the layoff.

Section 3.  Twice a year, on March 1 and December 31, employees, by seniority, shall select shifts:  If the Company determines that its needs are not met by the selections, it may reassign shifts in order that its needs are fulfilled.

## ARTICLE XVII

### HEALTH AND WELFARE FUND

Section 1.  (a)  Commencing with the first day of April, 2000, and for the duration of the current collective bargaining agreement and any renewals or extensions thereof, the Employer agrees to make payments to the respective Health and Welfare Funds for each and every employee performing work within the scope of and/or covered by this collective bargaining agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status as a member or non-member of the Local Union from the first hour of employment subject to this collective bargaining agreement as follows:

(b)  Commencing with the first day of April, 2000, the Employer shall contribute to the respective Health and Welfare Funds the sum of $4.16 1/4 per hour figured to the nearest

- 16 -

quarter hour for which an employee covered by this Agreement receives pay up to a maximum of forty (40) hours but not more than $166.50 per week for any one employee.

(c)  Commencing with the first day of April, 2001, the Employer shall contribute to the respective Health and Welfare Funds the sum of $4.41 1/4 per hour figured to the nearest quarter hour for which an employee covered by this Agreement receives pay up to a maximum of forty (40) hours but not more than $176.50 per week for any one employee.

(d)  Commencing with the first day of April, 2002, the Employer shall contribute to the respective Health and Welfare Funds the sum of $4.46 1/4 per hour figured to the nearest quarter hour for which an employee covered by this Agreement receives pay up to a maximum of forty (40) hours but not more than $178.50 rate per week for any one employee.

(e)  Commencing with the first day of April, 2000, and for the duration of the current collective bargaining agreement and any renewals or extensions thereof, the Employer agrees to make payments to the respective Health and Welfare Funds as follows:

> The Employer agrees to make contributions up to a maximum of forty (40) hours on behalf of all employees who may be on layoff status during any payroll period but have completed three (3) days of work in that payroll period.

(f)  For purposes of this Article, each hour paid for or any portion thereof, figured to the nearest quarter hour, as well as hours of paid vacation, paid holidays and other hours for which pay is received by the employee shall be counted as hours for which contributions are payable.

- 17 -

(g)   If an employee is absent because of illness or an off-the-job injury and notifies the Employer of such absence, the Employer shall continue to make the required contribution of thirty-two (32) hours for a period of four (4) weeks.  If an employee is injured on the job the Employer shall continue to pay the required contributions until such employee returns to work; however, such contributions of 32 hours shall not be paid for a period of more than twelve (12) months.

(h)   There shall be no deduction from equipment rental of owner-operators by virtue of the contributions made to the Health and Welfare Fund, regardless of whether the equipment rental is at the minimum rate or more, and regardless of the manner of computation of owner-driver compensation.

(i)   Hourly contributions to the Health and Welfare Fund must be made for each hour worked on each regular or extra employee, even though such employee may work only part time under the provisions of this contract, including weeks where work is performed for the Employer but not under the provisions of this contract, and although contributions may be made for those weeks into some other Health and Welfare Fund.

(j)   All contributions shall be made at such time and in such manner as the Trustees require, and the Trustees shall have the authority to have an independent Certified Public Accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Welfare Fund.

- 18 -

(k)  If an Employer fails to make contributions to the Welfare Fund within 72 hours after the notice of delinquency set forth in this Agreement, the Local Union shall take whatever steps are necessary to secure compliance with this Article, any provisions of this Agreement to the contrary notwithstanding, and the Employer shall be liable for all costs for collecting the payments due, together with attorneys' fees and such penalties which may be assessed by the Trustees.

(l)  The Employer's liability for payment hereunder shall not be subject to the Grievance Procedure or arbitration provided under this Agreement.

(m)  The Employer and Union which are signators hereto ratify the designation of the Employer and the Employee Trustees under such Agreement, and ratify all action already taken, or to be taken by such Trustees within the scope of their authority.

(n)  All Employers contributing hereunder shall post each month at each terminal, or other place of business where employees have easy access thereto, an exact copy of the remittance report form of contributions sent to the Fund.

Section 2.  (a)  For employees who retire under the Teamsters Pension Fund, the Company shall pay, for up to eighteen (18) months, the employee's COBRA payment to the Health and Welfare Fund.

(b)  Such payment shall go into effect after the Health and Welfare Fund ceases making such payment.  In no event shall the Company's payment exceed four hundred dollars ($400.00) per

## ARTICLE XIX

### PENSION FUND

This Pension Article shall supersede and prevail over any other inconsistent provisions or articles contained within this agreement.

(a)   Commencing with the first day of April, 2000, and for the duration of the current collective bargaining agreement between Local Union 25 and the Employer, and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund for each and every employee performing work within the scope of and/or covered by this collective bargaining agreement, whether such employee is a regular, probationary, temporary or casual employ- ee, irrespective of his status as a member or non-member of the Local Union, from the first hour of employment subject to this collective bargaining agreement as follows:

(b)   For each hour or portion thereof, figured to the nearest quarter hour for which an employee receives pay or for which pay is due, the Employer shall make a contribution of $3.91 per hour to the New England Teamsters and Trucking Industry Pension Fund but not more than $156.40 per week for any one employee from the first hour of employment in such week.

(c)   Commencing with the first day of April, 2001 the said hourly contribution rate shall be $4.06 but not more than $162.40 per week for any one employee.

- 21 -

(d)   Commencing with the first day of April, 2002 the said hourly contribution rate shall be $4.21 but not more than $168.40 per week for any one employee.

(e)   Commencing with the first day of April, 2000 and for the duration of the current collective bargaining agreement and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund as follows:

> The Employer agrees to make contributions up to a maximum of forty (40) hours on behalf of all employees who may be on layoff status during any payroll period but have completed three (3) days of work in that payroll period.

(f)   For purposes of this Article, each hour for which wages are paid or due, or any portion thereof, figured to the nearest quarter hour, as well as hours of paid vacation, paid holidays and other hours for which pay is due or received by the employee, shall be counted as hours for which contributions are payable.   In computing the maximum amount due any week, there shall be no daily limit on the number of hours for any one day in such week, whether such hours are performed on straight time or overtime rates, but payments shall be made at the amount set forth above.

(g)   If a regular employee (as defined in the collective bargaining agreement) is absent because of illness or an off-the-job injury and notifies the Employer of such absence, the Employer shall continue to make the required contributions for a period of four (4) weeks for forty (40) hours per week.   If an employee is injured on the job, the Employer shall continue to

pay the required contributions at the rate of forty (40) hours for each such week until the employee returns to work; however, such contributions of forty (40) hours shall not be paid for a period of more than twelve (12) months.

(h)   The Employer agrees to and has executed a copy of the New England Teamsters and Trucking Industry Pension Fund Agreement and Declaration of Trust dated April 11, 1958, and accepts such Agreement and Declaration of Trust, as amended, and ratifies the selection of the Employer Trustees now or hereafter serving as such, and all action heretofore or hereafter taken by them within the scope of their authority under such Agreement and Declaration of Trust.

(i)   The parties agree that the Pension Plan adopted by the Trustees of the New England Teamsters and Trucking Industry Pension Fund shall at all times conform to the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat its contributions made to the Fund as a deduction for income tax purposes.

(j)   It is also agreed that all contributions shall be made at such time and in such manner as the Trustees shall reasonably require; and the Trustees shall have the authority to have an audit of the payroll and wage records of the Employer for all employees performing work within the scope and/or covered by this collective bargaining agreement for the purpose of determining the accuracy of contributions to the Pension Fund and adherence to the requirements of this Article of the collective bargaining agreement regarding coverage and contributions, such audit may,

at the option of the Trustees, be conducted by an independent
certified public accountant or a certified public accountant
employed by the New England Teamsters and Trucking Industry
Pension Fund.

(k)    If the Employer shall fail to make contributions to
the Pension Fund by the twentieth (20th) day of the month
following the month during which the employees performed work or
received pay or were due pay within the scope of this collective
bargaining agreement, up to and including the last completed
payroll period in the month for which contributions must be paid,
or if the Employer, having been notified that its contributions
to the Fund have been under reported and/or underpaid, fails
within twenty (20) days after such notification to make any
required self-audit and/or contributions found to be due, the
Local Union shall have the right, after an appropriate 72 -hour
notice to the Employer, to take whatever steps it deems necessary
to secure compliance with this Agreement, any provision of this
collective bargaining agreement to the contrary notwithstanding,
and the Employer shall be responsible to the employees for losses
resulting therefrom.    Also, the Employer shall be liable to the
Trustees for all costs of collecting the payments due together
with attorneys' fees and such interest, liquidated  damages or
penalties which the Trustees may assess or establish in their
discretion.    The Employer's liability for payment hereunder shall
not be subject to the grievance procedure and/or arbitration if
such is provided in this Agreement.

(l)   It is understood and agreed that once a payment or payments are referred to an attorney for collection by the Trustees of the New England Teamsters and Trucking Industry Pension Fund and/or the Local Union, the Local Union and its business agents or chief executive officer shall have no right to modify, reduce or forgive the Employer with respect to its liability for unpaid contributions, interest, liquidated damages or penalty as may be established or assessed by the Trustees in their discretion against delinquent Employers.

(m)   Contributions to the Pension Fund must be made for each week on each regular or extra employee, even though such employee may work only part time under the provisions of this contract, including weeks where work is performed for the Employer but not under the provisions of this contract, and, although contributions may be made for those weeks into some other Pension Fund.

(n)   No oral or written modification of this Article regarding pensions and retirement shall be made by the Local Union or the Employer and, if made, such modification shall not be binding upon the employees performing work within the scope of this collective bargaining agreement and covered by this Article or upon the Trustees of the New England Teamsters and Trucking Industry Pension Fund.

(o)   All Employers contributing hereunder shall post each month at each terminal, or other place of business where employees have easy access thereto, an exact copy of the remittance report form of contributions sent to the Fund.

- 25 -

## ARTICLE XX

### GRIEVANCE PROCEDURE

Section 1.  It is agreed that any employee or group of employees may individually or through their representatives, present grievances to Management.  If an employee believes himself/herself to have been injured or treated unfairly by the Company by reason of the application of any of the within Articles, redress may be sought as follows:

(a)  Any employee may, individually or through the representative, present a complaint to employee's immediate supervisor within seven (7) calendar days of the incident.

(b)  If satisfaction is not obtained in that manner within forty-eight (48) hours after the complaint is made, employee may, within seven (7) calendar days thereafter, take up the matter in writing with full and complete information and facts regarding the basis for the complaint with the superintendent or next higher level of Management.

(c)  The superintendent or Manager shall, within fourteen (14) calendar days after the complaint has been submitted, render a decision in writing.

(d)  If the grievance remains unresolved, the Union may submit the grievance to the American Arbitration Association for arbitration under its procedures.  The decision of the arbitrator shall be final and binding on the Company, Union and employee.

(e)  The Company and the union agree that unless the steps above are strictly adhered to, the complaint will be considered untimely and void.

Employees and their representatives shall cooperate with the Company to facilitate the prompt handling of grievances presented under this Article.

The Company and the Union shall share the cost of the arbitrator's fee and expenses.  Each party shall pay its own representatives.

Section 2.  Both parties to this contract agree that no strike, walkout, slowdown or lockout shall take place during the life of this Agreement.

## ARTICLE XXI

### CONDITIONS OF EMPLOYMENT

Section 1.  The Company agrees that it will not refuse to hire, or discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, condition, or privilege of employment, because of such individual's race, color, creed, religion, sex, age, or national origin as provided by law or limit, segregate, or classify its employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, creed, religion, sex, age, or national origin as provided by law.

Section 2.  Employees covered by this Agreement shall not compete with the Company by selling or buying petroleum products except for or from the Company while they are employed under this Contract.  Any employee breaking this rule may be discharged at once.

## ARTICLE XXII

### ALCOHOL, DRUGS AND CONTROLLED SUBSTANCE POLICY

The Coastal Oil New England, Inc. Chelsea facility program on alcohol, drugs and controlled substances shall continue in full force and effect.

## ARTICLE XXIII

### SUCCESSORS AND ASSIGNS

Section 1.  Binding upon Successors.  This Agreement shall be binding upon the parties hereto and their successors and assigns. It is understood that no leasing device shall be used to evade this Agreement.  The employer shall give notice of the existence of this Agreement to any successor or assign of the operations covered by this Agreement and such notice shall be in writing, with a copy to the Union within thirty (30) days of the effective date of the sale or transfer of said operations.

## ARTICLE XXIV

### TERMINATION OR RENEWAL

Section 1.  This Agreement shall remain in full force and effect and shall not be altered during the period from April 1, 2000 to March 31, 2003.

Section 2.  This Agreement shall continue in full force and effect thereafter from year to year on an annual basis unless one of the parties hereto shall give to the other sixty (60) days

notice prior to the termination date of this Agreement in writing of its intention to terminate or revise this Agreement.

COASTAL OIL NEW ENGLAND, INC.:

_____          _____
                                                    11/17/2000
                                                    DATE

TEAMSTERS LOCAL UNION #25:

_____          _____
                                                    10/18/2000
                                                    DATE

- 29 -

## SIDE LETTER

If the Union establishes a 401K plan, the Company will, upon receiving appropriate authorizations from employees, make deductions from employees' wages for the 401K plan. This Agreement is conditioned upon the Company reviewing the plan documents and determining that it is incurring no liability by agreeing to the above.

COASTAL OIL NEW ENGLAND, INC.:

_____    _____11/17/2000_____
                                              DATE

TEAMSTERS LOCAL UNION #25:

_____    _____10/18/2000_____

ASM\CBA\COASTAL-CHELSEA-2000

- 31 -

# TEAMSTERS UNION 25
# HEALTH SERVICES & INSURANCE PLAN

## *AGREEMENT AND DECLARATION OF TRUST*



## *APRIL 1, 1997*

# AGREEMENT AND DECLARATION OF TRUST

This Agreement and Declaration of Trust originally made the twelfth day of April, 1954 by and between the five Employer Trustees, signatories thereto and the five Union Trustees, signatories thereto hereinafter collectively called the "Trustees"; the Employers Group of Motor Freight Carriers , Inc., hereinafter referred to as the "Association"; and Teamsters, Chauffeurs, Warehousemen and Helpers Union No. 25, hereinafter referred to as the "Union"; and the several Employers who are, and the several Employers who shall join and become parties to this Agreement and Declaration of Trust as hereinafter provided.

## A. WITNESSETH

WHEREAS, an Agreement dated April 12, 1954 had been entered into between the Association and the Union which Agreement provided that subject to certain terms and conditions each Employer should pay $.07 per hour for each straight-time hour worked by each of its Employees by a contribution to a Health and Welfare Fund hereinafter referred to as the "Trust Estate" for the benefit of said Employees or other Employees provided, however, that the rate of contribution shall be in accordance with any further continuation of the Agreement or any further Agreement which may be entered into between the Association and the Union as hereafter defined:

WHEREAS, the Union has executed and may execute similar collective bargaining agreements with individual Employers whether members of the Association or not, who are Employers of the members of the Union concerning contributions to said Trust Estate and,

WHEREAS,  the said Trust Estate in whole or in part could be used for certain group insurance benefits for eligible Employees as deemed hereunder and,

WHEREAS, the Agreement and Declaration of Trust made as of the twelfth day of April, 1954 by and between the aforementioned parties has from time to time been amended and,

WHEREAS, the said Agreement and Declaration of Trust is still in full force and effect and has been since the date first mentioned above, but during such period the Trustees have found it necessary to amend said Agreement and Declaration of Trust and,

WHEREAS, the Trustees, for purposes of clarity and administrative ease, deem it wise, desirable, and beneficial to incorporate all of the amendments made to such Agreement and Declaration of Trust from April 12, 1954 through August 13, 1996, and to incorporate all of said amendments and certain other revisions deemed necessary by the Trustees into a revised Agreement and Declaration of Trust and,

WHEREAS, this instrument incorporates all of such amendments and,

WHEREAS, the Trustees, signatories hereto by their execution of this Agreement, hereby ratify the continuation of the aforementioned Trust and accept the Trust herein created and continued and declare that they will administer the same pursuant to the provisions hereof.

NOW, THEREFORE, IN CONSIDERATION OF THE PREMISES AND THE COVENANTS HEREIN CONTAINED, THE ASSOCIATION, EACH EMPLOYER WHO IS OR BECOMES A PARTY

TO THIS AGREEMENT, AND THE UNION SEVERALLY DECLARE THAT ALL IS THEIR MUTUAL OBLIGATION TO ESTABLISH THE WITHIN TRUST FOR THE PURPOSE OF SETTING UP A HEALTH AND WELFARE PLAN PROVIDED FOR IN THE SAID AGREEMENT ABOVE REFERRED TO AND THAT THEY WILL DO ALL THINGS REQUIRED OF THEM TO DISCHARGE SAID OBLIGATION AND EFFECTUATE THE PURPOSES OF SAID TRUST AND WILL DO ALL THINGS HEREINAFTER SPECIFICALLY REQUIRED OF THEM, AND THE TRUSTEES DECLARE THAT THEY WILL RECEIVE AND HOLD CONTRIBUTIONS OR PAYMENTS AND ANY OTHER MONEY OR PROPERTY WHICH MAY COME INTO THEIR HANDS AS TRUSTEES HEREUNDER ALL SUCH FUNDS BEING HEREINAFTER REFERRED TO AS THE "TRUST ESTATE" WITH THE FOLLOWING POWERS AND DUTIES, FOR THE FOLLOWING USES AND PURPOSES, AND UPON THE FOLLOWING TERMS AND CONDITIONS:

## B. DEFINITIONS

1.      The term "Employer," as used herein, shall include all employer members of the Association and in addition shall mean an employer of labor in the general trucking industry and other Employers who employ Employees covered by contracts with the Union as defined in the paragraph below and either (a) has in force or who executes an agreement with the Union providing for such Employer's participation in this Trust and his adoption of this Declaration of Trust, or (b) who shall, with the consent of the Trustees, execute a form furnished by the Trustees undertaking all the duties of an Employer participating in this Trust. The term "Employer" may also include the Teamsters, Chauffeurs, Warehousemen and Helpers Union No. 25 and other affiliated local unions and related Trust Funds which provide benefits for Employees covered by this plan.

It is understood and agreed that any Employer becoming an Employer under this Agreement, who shall not be a member of the Association, agrees to abide by all the provisions set forth in any agreement involving the Trust Estate and between the Association and the Union and agree that the Association shall be his representative in connection with the Trust Estate.

2.      The term "Employee" as used herein shall mean an Employee of an Employer hereunder who shall be covered by a collective bargaining agreement between the Association and the Union or between an Employer and the Union.

3.      The term "benefit" shall include such of the benefits authorized under Paragraph A9 as the Trustees shall determine are possible. There shall be no benefits paid for any occupational injury or illness which may be compensable under any statute. In the event of a state or federal compulsory cash sickness benefit law, the benefits paid hereunder may, at the discretion of the Trustees, be reduced to the amounts paid under any such law.

4.      The terms "Union," or "Local Union," as used herein mean any local union affiliated with the International Brotherhood of Teamsters that is a party to this Trust Agreement and whose participation has been approved and accepted by the Trustees.

5.      (a) the term "Party to this Agreement" shall include all Employer members of the Association and also any Employer who shall in writing accept the terms of this Trust and be accepted in writing by the Trustees and Teamsters, Chauffers, Warehousemen and Helpers Union No. 25.

(b) The title of the Trust created herein shall be "Teamsters Union 25 Health Services & Insurance Plan."

6.      The term "ERISA" shall mean the Employment Retirement Income Security Act of 1974, as amended from time to time.

## C. ADMISSION TO THE TRUST

7.    (a) Any Employer of labor within the jurisdiction of the Union, not an original party to this Declaration of Trust, who employs Employees as defined in Article 2 above may be permitted by the Trustees to become a party to this Declaration of Trust upon the condition that the said Employer shall subscribe to a collective bargaining agreement with the Union and to the terms of this Agreement.

## D. THE TRUST ESTATE

8.    The Trustees shall have the power to demand, collect and receive employer contributions or payments and other funds and may hold the same until applied to the ultimate purposes provided for in Paragraph A9 hereof, and may take such steps, including the institution and prosecution of or the intervention in any proceeding at law or in equity or in bankruptcy, as may be necessary or desirable to effectuate the collection of such employer contributions or payments and other funds to which said Trustees shall be entitled under the Agreements hereinbefore referred to.

9.    The Trustees shall hold, manage, invest and reinvest the Trust Estate for the following purposes and upon the following conditions:

(a) The Trustees are authorized to maintain a self-insured fund, operate clinics or other facilities for health services, and/or to purchase policies of group insurance to be issued by an insurance company or companies duly authorized to conduct business in the Commonwealth of Massachusetts, providing for eligible Employees and dependents only such benefits in amounts which the Trustees, in their sole discretion, deem necessary or desirable to best effectuate the purpose of this Trust.

Such policies may contain such provisions and be subject to such limitations and conditions as the Trustees, in their sole discretion, shall from time to time determine, and shall include such Employees as the Trustees shall from time to time determine are eligible for receipt of such benefits, in accordance with the eligibility requirements under Article 2.

(b) The Trustees are authorized to provide, through self-insurance or clinics or other facilities for health services or to pay, or cause to be paid the premiums on group insurance policies providing benefits for temporary disability, hospital expense, surgical expense, medical expense, dental expense, optical expense, life insurance, and accidental death and dismemberment benefits and such other benefits and forms of group insurance as may be proper under Article 9 Paragraph (a) and as the Trustees may determine from time to time; to insure such Employees and their dependents as shall be eligible in accordance with the rules and regulations determined by the Trustees from time to time in accordance with the eligibility requirements under Article 2. The policies of insurance may be contracted for in the name of and issued to the Trustees and may contain such provisions as the Trustees may determine.

(c) The Trustees are authorized to pay or cause to be paid all reasonable and necessary expenses of creating this Trust, of collecting the employer contributions or payments and other funds to which the Trustees may be entitled and of administering the affairs of this Trust, including the employment of such administrative, legal, expert, and clerical assistance, purchase or lease of such premises, materials, supplies, and equipment, and the performance of such other acts as the Trustees, in their sole discretion, find necessary or appropriate in the performance of their duties.

(d) The Trustees are authorized to establish, hold, and accumulate such reserve funds as are necessary for the proper execution of the Trust herein created.

(e) The Trustees are authorized to deposit all funds and monies received by them in such bank or banks in the Commonwealth of Massachusetts as they may select and with respect to such Reserve Funds and the Trustees are authorized to establish under Paragraph (d) of this article, to appoint a national banking association or trust company each with a principal place of business in the Commonwealth of Massachusetts as Corporate Trustee to hold and invest and reinvest the Reserve Funds deposited with such Corporate Trustee under the terms of the expressed delegation of the Trustees' investment authority which are set forth in any applicable corporate trust agreement.

In investing the Reserve Funds held under Paragraph (d) of this article the Trustees shall have full power to take any and all action with respect to holding, buying, selling, or maintaining such investments as they in their sole discretion may deem appropriate provided that no investment shall be made in any securities, of whatsoever nature or kind, of any Employer hereunder, or subsidary or affiliate thereof; and subject to this provision the Trustees may delegate such investment authority to the Corporate Trustee.

(f) Notwithstanding any other provisions in this Agreement and Declaration of Trust, the Trustees are empowered to appoint Administrators to service policies of insurance purchased hereunder, to receive funds of the Trustees and to perform duties and exercise powers as may from time to time be agreed upon between the Trustees, including the lawful delegation of said responsibility, obligations, or duties by said Trustees. Administrators, as used herein, shall include but not be limited to a Plan Administrator, Claim Administrator, and Accounting Administrator. The Trustees may also, by formal vote, appoint an Investment Manager who shall have such duties and responsibilities as may be determind by the Trustees and as is required by law.

## E. DUTIES OF EMPLOYER

10.    Each Employer shall pay over to the Trustee, or their duly designated representative, not later than ten (10) days after the close of each work month a sum of money equal to the cents per hour required by the New England Freight Agreement and/or any other applicable collective bargaining agreement between the Union and any Employer as defined in Paragraph 1 during such work month. Such payment shall be accompanied by such reports as the Trustees in their sole discretion shall deem necessary or desirable in the administration of the Trust Estate.

11.    The Trustees shall have the right to require such reports as are necessary for the fulfillment of this Declaration of Trust and the contracts of insurance, and without limiting the generality of the foregoing, each Employer and the Union (the members of which are covered by this agreement) shall promptly furnish to the Trustees on written demands such records of the Employees as their names, Social Security number, payroll records, and other information as may be necessary in connection with the administration of this Trust and said policies.

The Trustees may examine the pertinent records of each Employer at the Employer's place of business whenever they deem such examination to be necessary for the proper administration of the Trust Estate. In the event any Employer shall be over more than twenty (20) days in default on any monthly payment, the Employer shall be responsible for all unpaid contributions, interest thereon at the rate of one per cent (01%) per month of the amount due, liquidated damages of twenty per cent (20%), reasonable attorneys' fees, and other costs of collection as authorized by ERISA.

In addition to all sums due to the Fund by an Employer under the terms of the applicable collective bargaining agreement as aforesaid an Employer shall also be obligated to contribute to the Fund all sums due as a result of a legal duty established and provided by applicable labor management relation law, including any duty arising under the National Labor Relations Act.

## F. TRUSTEES

12.    The Trustees shall consist of three (3) persons named by the Association (hereinafter called Employer Trustees) and three (3) persons named by the Union (hereinafter called Union Trustees). Each Trustee shall continue to serve until his successor has been designated as herinafter set forth.

13.    The Trustees, in their collective capacity, shall be known as the Teamsters Union 25 Health Services & Insurance Plan, and shall conduct the business of the Trust and execute all instruments in said name.

14.    The Trustees shall administer the Trust in accordance with its terms and the law.

15.    The Trustees may exercise all rights or privileges granted to the policyholder by the provisions of each policy purchased by the Trust Estate or allowed by the insurance carrier of each such policy and may agree with such insurance carrier to any alteration, modification, or amendment of each such policy and may take any action respecting each such policy or the insurance provided thereunder which they, in their sole discretion, may deem necessary or advisable, and such insurance carrier shall not be required to inquire into the authority of the Trustees with regard to any dealings in connection with each such policy.

16.    The Trustees shall have the power to construe the provisions of this Declaration of Trust and the terms used herein, and any construction adopted by a majority of ALL the Trustees in good faith shall be binding upon ALL Employers and Employees and the Union which same are parties to this Declaration of Trust.

17.    The Trustees shall not receive compensation for the performance of their duties as Trustees, but shall be reimbursed for all reasonable and necessary expenses which they may incur in the performance of their duties.

18.    The Trustees shall promulgate such rules and regulations, plan of benefits, or such other documents, as may be proper and/or necessary for the sound and efficient administration of the Trust. The Trustees shall have full authority to determine the requirements for eligibility for benefits, to adopt rules and regulations setting forth same, and all such eligibility determinations and rules and regulations relating thereto adopted by a majority of the Trustees in good faith shall be binding upon the Employers, the Union, the participants, and their dependents.

19.    (a) The Trustees shall manage the assets of the Trust and conduct themselves in accordance with the provisions of ERISA. It is further the express intention of the Trustees that this Declaration of Trust be applied and interpreted so as to be in full compliance with all applicable provisions of law including ERISA.

(b) A rejected claimant may request a review of his case by the Trustees or by their designee for this purpose.

20.    A Trustee may resign and become and remain fully discharged from all further duty or responsibility hereunder upon giving thirty (30) days' notice in writing to the remaining Trustees, or such shorter notice as the remaining Trustees may accept as sufficient. Such notice shall state a date such resignation shall take effect; and such resignation shall take effect on the date specified in said notice unless a successor Trustee shall have been appointed at an earlier date, in which event such resignation shall take effect immediately upon the appointment of and acceptance of this Trust by such successor Trustee. Provided, however, that in the event that the party by whom he was appointed has failed to

5

appoint a successor, such resignation will not become effective until his successor has been appointed, but in no event later than sixty (60) days after the original notice has been sent to the remaining Trustees.

The term of each Trustee shall be at the pleasure of the party by whom he was appointed.

21.    In the event any Trustee shall die, become incapable of acting hereunder resign, or be removed, or to provide for the expiration of the term of such Trustee, a successor Trustee shall be appointed by the party which appointed said Trustee. The successor to any Employer Trustee appointed by the Association shall be certified to the Trustees by an instrument signed by the President and an officer of the Association. Upon the receipt of such certification by the Trustees, said successor Trustee shall be deemed to have been properly appointed a Trustee hereunder. The successor shall be certified to the Trustees by the President and Secretary of the Union and upon the receipt of such certification by the Trustees said successor Trustee shall be deemed to have been properly appointed a Trustee hereunder.

22.    Any successor Trustee shall immediately, upon his appointment as a Trustee and his acceptance of the trusteeship in writing, become vested with all the property, rights, powers, duties, and immunities of a Trustee hereunder with like effect as if originally named as a Trustee, and the insurance carrier of each policy shall be immediately notified thereof.

23.    (a) No vacancy or vacancies in the office of Trustee shall impair the power of remaining Trustees, acting in the manner herein provided, to administer the affairs of this Trust.

( b) In the event of the failure of any party to appoint a successor Trustee to fill a vacancy in the office of Trustee, which such party has the power to fill, for a period of thirty (30) days any two Trustees may petition a court of appropriate jurisdiction for an order requiring such a party to appoint a successor Trustee forthwith, and, in the event of failure of said party to comply with such order, may petition a court of appropriate jurisdiction for the appointment of a successor Trustee to fill such vacancy.

24.    The Union Trustees shall elect one of their number to be Co-Chair of the Board of Trustees and the Employer Trustees shall elect one of their number to be the other Co-Chair of the Board of Trustees.

25.    (a) The Trustees shall meet in  Massachusetts at least annually.

(b) Any two Trustees may call a special meeting at any location, setting the time and place by giving at least five (5) days' notice in writing to the remaining Trustees, provided, however, that the time and place for a special meeting may be determind by all the Trustees at any regular meeting held under (a) of this Article, without the necessity of giving any further notice.

26.    (a) Four (4) Trustees, provided two (2) Employer Trustees and two (2) Union Trustees are present shall constitute a quorum for the transaction of business.

(b) Any action taken by the Trustees shall be by the concurring vote of four (4) Trustees, provided, however, that at least two (2) of the Employer Trustees and two (2) of the Union Trustees vote for the passage of the action.

(c) In the event of a deadlock of the Trustees in any matter, including the administration of the Trust Estate, the Trustees shall agree on an impartial umpire to decide such dispute, or in the event of failure of the Trustees to agree within sixty (60) days, an impartial umpire to decide such dispute shall, on the petition of two (2) Employer Trustees, or two (2) Union Trustees, *be* appointed by the United States District Court for the District of Boston.

27.    The Trustees shall keep true and accurate minutes, books of account, and records of all their transactions as Trustees, which shall be audited annually, or more often, by a Certified Public

Accountant. All checks, drafts, vouchers, or other withdrawals of funds from the account or accounts of the Trust Estate shall be countersigned by the Co-Chairs or by one of the Trustees from each group of Trustees, as resolutions for such purposes may be adopted by the Trustees. A copy of the audit shall be furnished to the Association and to the Union.

28.     (a) The Trustees shall by resolution provide bonding coverage for themselves, fiduciaries, and every person who handles funds or other property of the Trust in accordance with applicable law and ERISA.

(b) The Trustees may provide insurance for the fiduciaries of the Trust or for itself to cover liability or losses occurring by reason of the act or omission of a fiduciary in accordance with applicable law and ERISA.

29.     No successsor Trustee shall in any way be liable or responsible for anything done or committed in the administration of the Trust prior to the date they became a Trustee. The Trustees shall not be liable for the acts or omissions of any investment manager, attorney, agent or assistant employed by them in pursuance of this agreeement, if such investment manager, attorney, agent, or assistant was selected pursuant to this Trust Agreement and such person's performance was periodically reviewed by the Trustees who found such performance to be satisfactory; provided that nothing herein shall relieve any Corporate Trustee of any liability with regard to the performance of its Employees.

## G. TERMINATION OF TRUSTS

30.     Upon the termination of this Trust, the Trustees shall apply the Trust Estate, in whole or in part, to the purposes specified in Paragraph A9 with regard to any Employees who may be eligible thereunder at such time, and any part thereof, which cannot be so applied, shall be applied to such other purposes as in the sole discretion of the Trustees will best effectuate the purposes of this Trust, including, without in any way limiting the generality of the foregoing, the transfer of the Trust Estate to the Trustees of any Trust organized to fulfill the same general purposes as this Trust.

## H. MISCELLANEOUS

31.     This trust is created and accepted in the Commonwealth of Massachusetts. All questions pertaining to the validity or construction of this instrument and to the transactions of the parties hereto shall be determind in accordance with federal law or the laws of the Commonwealth of Massachusetts as the context may require.

32.     Should any provision of this Declaration of Trust be deemed or held to be unlawful, or unlawful as to any person or instance, such facts shall not adversely affect the other provisions herein contained or the application of said provision to any other person or instance, unless such illegality shall make impossible or impractical the functioning of the ultimate plan.

33.     No person, partnership, or corporation dealing with the Trustees shall be obliged to see the application of any funds or property of the Trust, or to see that the terms of the Trust have been complied with, or be obliged to inquire into the necessity or expediency of any act of the Trustees, and every instrument effected by the Trustees shall be conclusive in favor of any person, partnership or corporation relying thereon that:

(a) At the time of delivery of said instrument the Trust was in full force and effect;

(b)  Said instrument was effected in accordance with the terms and conditions of this Declaration of Trust; and

(c)  The Trustees were duly authorized and empowered to execute such instrument.

34.    The Trustees, by joining in the execution of this agreement, hereby accept the Trust.

35.    Whenever any words are used in this Declaration of Trust in the masculine gender, they shall be construed as though also used in the feminine or neutral gender in all situations where they would so apply, and wherever any words are used in this Declaration of Trust in the singular form they shall be construed as though they were also used in the plural form in all situations where they would so apply, and wherever any words are used in this Declaration of Trust in the plural form, they shall be construed as though they were also used in the singular form in all situations where they would so apply.

36.    No Employee, nor any person claiming by, through, or under any Employee, nor any Employer (except as to an overpayment of contributions due as provided by law) shall have any right, title, or interest in or to the Trust Estate or any part thereof; provided, however, that any Employee who shall be actually covered by an insurance plan, or his beneficiaries under such plan, shall be entitled to the benefits in the forms and amounts and subject to the terms and conditions of such plan and of this Trust. No Employee shall have the option to receive any part of the employer's contribution instead of the benefits of such plan or of this Trust. No Employee shall have the right to assign his rights or benefits under such plan or this Trust or to receive a cash consideration in lieu of such benefits, nor shall rights be otherwise assignable or attachable, either upon the termination of the Trust or his withdrawal through severance of employment, or otherwise.

37.    This Agreement and Declaration of Trust may be amended by a concurring vote of two (2) Employer Trustees and two (2) Union Trustees at a special meeting, or meetings, of the Trustees, called for that purpose pursuant to a vote duly adopted by at least four (4) Trustees; provided, however, that no amendment shall provide for the use of the Trust Estate then in the hands of the Trustees for any purposes other than those set forth in Article 9 of this Agreement and Declaration of Trust or eliminate or modify the terms of Article 33 of this Agreement and Declaration of Trust, or permit any return of payments over, or of any part of the then existing Trust Estate to any Employers, except the return of an overpayment of contributions due, or so amend this Agreement and Declaration of Trust that there shall not be an equal number of Employer Trustees and Union Trustees to administer this Trust.  Any amendment adopted by the Trustees in the manner hereinbefore prescribed shall be set forth in an instrument of amendment and shall take effect only when said instrument of amendment shall have been signed by all of the Trustees.

38.    This Agreement and Declaration of Trust may be revoked at any time by the unanimous consent of the Trustees.  Revocation will take effect upon the execution of an instrument of revocation signed by the aforesaid consenting parties.  Upon the termination in the foregoing manner, the Trustees shall apply the Trust Estate, in whole or in part, to the purposes specified in Paragraph A9 hereof, with regard to any Employees who may be eligible thereunder at such time, and any part thereof which cannot be so applied shall be applied to such other purposes as, in the sole discretion of the Trustees, will best effectuate the purposes of this Trust, including without in any way limiting the generality of foregoing the transfer of the Trust Estate to the Trustees of any Trust organized to fulfill the same general purposes as this Trust.

39.    Nothing in this agreement shall be construed so as to limit in any way the lawful rights of any of the parties hereto.

40.    In the event that this Agreement and Declaration of Trust shall be amended or revoked, then the Trustees shall give such notice and take such other action as necessary to comply with all the applicable provisions of law including ERISA.

41.    The Trustees shall manage the assets of the Trust and conduct the business of the Fund in accordance with ERISA. It is the express intention of the Trustees that this Agreement and Declaration of Trust be applied and interpreted so as to be in full compliance with all applicable provisions of law, including ERISA and all regulations issued thereunder.

IN WITNESS WHEREOF, the undersigned parties have hereunto set their hands and seals this 13th day of August 1996.

Signed, Sealed, and Delivered in the Presence of:

**FOR THE UNION:**                                **FOR THE ASSOCIATION:**

    **UNION TRUSTEES:**                        **EMPLOYER TRUSTEES:**

Teamsters, Chauffeurs, Warehousemen          Employers Group of
and Helpers Union No. 25                     Motor Freight Carriers, Inc.

George W. Cashman, Co-Chair                   John J. Shaughnessy, Sr., Co-Chair

Joseph C. Conlon                             James M. Carlton

Joseph V. Laffey                             John J. McCarthy, Jr.

April 1, 1997

9

## ACCEPTANCE PAGE

The undersigned Employer, having entered into a collective bargaining agreement with Teamsters Local 25, affiliated with the International Brotherhood of Teamsters, which agreement provides, among other things, for contributions to the Teamsters Union 25 Health Services & Insurance Plan, agrees to be bound by the foregoing Agreement and Declaration of Trust and hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are named in said Agreement as Employer Trustees together with their successors selected in the manner provided in the within Agreement and ratifies and agrees to be bound by all actions taken by said Employer Trustees pursuant to the said Agreement and Declaration of Trust.

Dated: _6-25-01_          _Jetworks, Inc._
                          Employer


I certify and warrant that I am authorized to execute this acceptance on behalf of the above-named Employer.


By: _____   _Robert Kuzma_
    Name and Title              _President_

#6077



**Coastal**
The Energy People

May 9, 2001

Teamsters Union Local No. 25
Health Services & Insurance Plan
16 Sever Street - Sullivan Square
Boston, Massachusetts 02129

**RE: Monthly Remittance Report
     Employer Code: 6077**

Gentlemen:

Effective immediately, please send our monthly remittance report for Local 25
union employees to:

**ElPaso Energy Service Co.
Compensation, HRIS & Payroll
Room W2814A
1001 Louisiana
Houston, Texas 77002
Attention: Charlotte Blount
Telephone: 713-420-3122
Fax: 713-420-4532**

Thank you.

Sincerely,

Betty Marrone
Supervisor, Human Resources

Cc: Charlotte Blount

POSTED
MAY 11 2001

*Coastal Refining & Marketing, Inc.*
A SUBSIDIARY OF THE COASTAL CORPORATION
P O BOX 818 • 611 ROUTE 46 WEST • HASBROUCK HEIGHTS NJ 07604-0818 • 201.393-9494 • FAX 201-393-4591



**Coastal**
The Energy People



RECEIVED
JUN 1 8 2001
By _____

# 6077

May 22, 2001

International Brotherhood of Teamsters
Local # 25
544 Main Street
Boston, Massachusetts  02129-1113

Dear Mr. Cashman:

The Coastal Corporation, of which Coastal Oil New England, Inc. was an operating company, was recently merged with El Paso Energy. The merger, initially announced in February 2000 was finalized on January 30, 2001. The correct name of the newly combined companies is: The El Paso Corporation.

The El Paso Corporation maintains it's corporate headquarters in Houston, Texas. The correct mailing address for necessary correspondence should be directed to:

> The El Paso Corporation
> 1001 Louisiana Street
> Travis Place – Room 9.043
> Houston, Texas 77002
> Attn: Mr. Todd Cannon

If I can be of any additional help, please don't hesitate to ask.

Sincerely,
Coastal Oil New England, Inc.

Mark S. Brennan
Terminal Manager

Cc: Steve Roche – Steward Local #25 – Chelsea
    George Shafto – CONE
    Todd Cannon – El Paso Corporation

**Coastal Refining & Marketing, Inc.**
A SUBSIDIARY OF THE COASTAL CORPORATION
222 LEE BURDANX HWY • REVERE MA 02151-4096 • 617/286-7100 • 800/778-7634 • ILX 174082 • FAX 617/286-7205



RECEIVED
MAY 2 5 2001
CB
By _____